UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

---------------------------------------------------------------x
                                                               :
In re                                                          :    Chapter 11
                                                               :
NTK HOLDINGS, INC., et al.,[1]                                 :    Case No. 09 – 13611 (KJC)
                                                               :    (Jointly Administered)
                                                               :
         Debtors.                                              :    Hearing Date: November 19, 2009 at 1:30 p.m.
                                                               :    Objection Deadline: November 12, 2009 at 4:00 p.m.
                                                               :
---------------------------------------------------------------x

## DEBTORS' APPLICATION PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2014(a) FOR AUTHORITY TO RETAIN AND EMPLOY BLACKSTONE ADVISORY SERVICES L.P. AS FINANCIAL ADVISOR *NUNC PRO TUNC* TO THE COMMENCEMENT DATE

NTK Holdings, Inc. ("*NTK Holdings*"), and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "*Debtors*," and together with their non-debtor affiliates, "*Nortek*"), hereby submit this application (the "*Application*") pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "*Bankruptcy Code*") and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*") for authority to retain and employ Blackstone Advisory Services L.P. ("*Blackstone*") to serve as financial advisor *nunc pro tunc* to the Commencement Date (as

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: NTK Holdings, Inc. (4298); Nortek Holdings, Inc. (9907); Nortek, Inc. (4991); Aigis Mechtronics, Inc. (6764); Broan-Mexico Holdings, Inc. (1438); Broan-NuTone LLC (4397); Broan-NuTone Storage Solutions LP (4328); CES Group, Inc. (5781); CES International Ltd. (6119); Cleanpak International, Inc. (2925); Elan Home Systems, L.L.C. (7629); Gefen, Inc. (1217); Governair Corporation (1240); GTO, Inc. (6645); HC Installations, Inc. (0110); Huntair, Inc. (2838); International Electronics, LLC (4321); Linear LLC (9070); Linear H.K. LLC (9638); Lite Touch, Inc. (0152); Magenta Research Ltd. (5160); Mammoth-Webco, Inc. (3077); Niles Audio Corporation (2001); Nordyne Inc. (4381); NORDYNE International, Inc. (7842); Nortek International, Inc. (0717); NuTone LLC (9551); OmniMount Systems, Inc. (7936); Operator Specialty Company, Inc. (6248); Pacific Zephyr Range Hood, Inc. (8936); Panamax Inc. (0890); Rangaire GP, Inc. (4327); Rangaire LP, Inc. (9900); Secure Wireless, Inc. (2485); SpeakerCraft, Inc. (6374); Temtrol, Inc. (3996); Xantech Corporation (1552); and Zephyr Corporation (1650). The Debtors' principal offices are located at 50 Kennedy Plaza, Suite 1900, Providence, Rhode Island 02903. The addresses for all of the Debtors are available at the website chapter11.epiqsystems.com/nortek.

defined below) to the Debtors in these chapter cases. In support of the Application, the Debtors respectfully represent as follows:

## Background

1. On October 21, 2009 (the "*Commencement Date*"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. Prior to the Commencement Date, the Debtors solicited votes on the Joint Prepackaged Plans of Reorganization of NTK Holdings, Inc., *et al.* (the "*Prepackaged Plan*") through a disclosure statement distributed in accordance with sections 1125 and 1126(b) of the Bankruptcy Code (the "*Disclosure Statement*"). As discussed more fully below, the Prepackaged Plan has been accepted by all but one of the impaired classes entitled to vote in excess of the statutory thresholds specified in section 1126(c) of the Bankruptcy Code.

## Nortek's Businesses

3. Nortek (through its wholly-owned subsidiaries) is a diversified manufacturer and distributor of innovative, high-quality and competitively-priced building products for residential, light commercial and commercial applications. Nortek's products are designed to meet the needs of professionals in the new construction and remodeling markets as well as individual contractors, wholesalers and do-it-yourself customers around the world.

4. Nortek operates within four (4) business segments: the Residential Ventilation Products ("*RVP*") segment, the Home Technology Products ("*HTP*") segment, the Residential Air Conditioning and Heating Products ("*Residential HVAC*") segment, and the

Commercial Air Conditioning and Heating Products ("*Commercial HVAC*") segment. Through these segments, Nortek manufactures and sells its products primarily to customers throughout the United States, Canada and Europe.

5. The RVP segment manufactures and distributes room and whole-house ventilation products and other products primarily for the professional remodeling and replacement markets, residential new construction market and do-it-yourself market. The principal products of the segment, which are sold under the Broan®, NuTone®, Venmar®, Best®, and Zephyr® brand names, among others, are: (i) kitchen range hoods, (ii) exhaust fans (such as bath fans and fan, heater and light combination units), and (iii) indoor air quality products. Nortek is one of the world's largest suppliers of residential range hoods and exhaust fans, and is the largest supplier of these products in North America.

6. The HTP segment manufactures and distributes a broad array of products designed to provide convenience and security for residential and certain commercial applications. The principal products of the segment, which are sold under the Niles®, Elan®, HomeLogic®, SpeakerCraft®, Proficient Audio Systems®, Sunfire®, Xantech®, Channel Plus®, Linear®, Mighty Mule®, OSCO®, Aigis®, Open House®, Magenta™, LiteTouch®, and Gefen® brand names, are: (i) audio/video distribution and control equipment, speakers, subwoofers, audio/video wall mounts and fixtures, (ii) security and access control products, (iii) power conditioners and surge protectors, (iv) lighting and home automation controls, and (v) structured wiring. Nortek sells the products in its HTP segment to distributors, professional installers, electronics retailers, and original equipment manufacturers. Sales in this segment are primarily driven by replacement applications, new installations in existing properties and the purchase of high-priced audio/video equipment such as flat panel televisions and displays.

7. The Residential HVAC segment principally manufactures and sells split-system air conditioners, heat pumps, air handlers, furnaces and related equipment, accessories and parts for the residential and certain commercial markets. For site-built homes and certain commercial structures, the segment markets its products under the licensed brand names Frigidaire®, Tappan®, Philco®, Kelvinator®, Gibson®, Westinghouse®, Broan®, Nutone®, and Maytag®. Within the residential market, Nortek is one of the largest suppliers of HVAC products for manufactured homes in the United States and Canada under the brand names Miller® and Intertherm®.

8. The Commercial HVAC segment manufactures and sells HVAC systems that are custom-designed to meet customer specifications for commercial offices, manufacturing and educational facilities, hospitals, retail stores, clean rooms and governmental buildings. These systems are designed primarily to operate on building rooftops, or on individual floors within a building, and to have cooling capacities. The segment markets its commercial HVAC products under the Governair®, Mammoth®, Temtrol®, Venmar CES™, Ventrol®, Webco®, Huntair®, Cleanpak™, and Fanwall® brand names. Nortek is one of the largest suppliers of custom-designed commercial HVAC products in the United States.

9. As of the Commencement Date, the Debtors' capital structure consisted of (i) approximately $750 million in 10% Senior Secured Notes due 2013 (the "*10% Notes*"), secured by a first priority lien on substantially all of Nortek's and its domestic subsidiaries' tangible and intangible assets other than those assets securing Nortek, Inc.'s five-year $350 million senior secured asset-based revolving credit facility (the "*ABL Facility*");
(ii) approximately $135 million drawn under the ABL Facility, which amounts are secured by a first lien on all accounts receivable and inventory and a second lien on all other assets of Nortek,

Inc. and its domestic subsidiaries; (iii) approximately $625 million aggregate principal amount outstanding in Nortek, Inc. 8 ½% Senior Subordinated Notes due 2014 (the "*8 ½% Notes*"); (iv) approximately $10 million aggregate principal amount outstanding in Nortek, Inc. Series A and Series B 9 ⅞% Senior Subordinated Notes due 2011 (the "*9 ⅞% Notes*"); (v) approximately $403 million in NTK Holdings 10 ¾% Senior Discount Notes due 2014 (the "*NTK 10 ¾% Notes*"); and (vi) approximately $286 million owed pursuant to that certain NTK Holdings Senior Unsecured Loan dated as of May 10, 2006 (the "*Bridge Loan*"). There is no established public trading market for the Debtors' capital stock. Thomas H. Lee Partners, L.P. and certain of its affiliates maintain the position of controlling shareholder of NTK Holdings.

10. NTK Holdings is the parent corporation of Nortek Holdings, Inc., which is the parent corporation of Nortek, Inc. The other Debtors are wholly-owned direct or indirect subsidiaries of Nortek, Inc. (collectively, the "*Subsidiary Debtors*"). All business operations are carried out by Nortek, Inc., the Subsidiary Debtors, and Nortek, Inc.'s non-debtor subsidiaries. Nortek's principal executive offices are located at 50 Kennedy Plaza, Providence, Rhode Island 02903.

11. As of the Commencement Date, the Debtors had approximately 4,534 employees in North America and the Debtors' and their non-debtor subsidiaries' unaudited consolidated financial statements reflected $926,800,000 of net sales for the 6-month period ended July 4, 2009. As of July 4, 2009, the Debtors and their non-debtor subsidiaries had total assets of approximately $1,655,200,000 and total liabilities of approximately $2,778,100,000.

### The Nortek Prepackaged Plan

12. As described in more detail in the *Declaration of Richard L. Bready in Support of the Debtors' Chapter 11 Petitions and Request for First Day Relief*, prior to the

Commencement Date, Nortek engaged in negotiations over the terms of a financial restructuring with its core creditor groups. These negotiations culminated in the agreement by certain holders (collectively, the "*Ad Hoc Committee*") of (i) more than 66 2/3% of the outstanding principal amount of the 8 ½% Notes, (ii) a majority of the outstanding principal amount of the NTK 10 ¾% Notes, and (iii) a significant portion of the outstanding principal amount of the 10% Notes to enter into Restructuring and Lock-Up Agreements (the "*Restructuring Agreements*") with Nortek, pursuant to which the members of the Ad Hoc Committee agreed to vote in favor of the Prepackaged Plan provided that certain conditions and milestones were satisfied.

13. In accordance with the terms of the Restructuring Agreements, on September 18, 2009, the Debtors commenced a solicitation of votes from all classes entitled to vote under the Bankruptcy Code. The Prepackaged Plan has been accepted in excess of the statutory thresholds specified in section 1126(c) of the Bankruptcy Code by all of the impaired classes of claims against Nortek, Inc.

14. Among the classes of claims against NTK Holdings, the class consisting of holders of NTK 10 ¾% Notes voted to accept the Prepackaged Plan, while the class consisting of lenders under the Bridge Loan voted to reject the Prepackaged Plan. The Debtors believe they have satisfied the requirements of section 1129(b) of the Bankruptcy Code and intend to seek confirmation of the Prepackaged Plan notwithstanding the rejection of the Prepackaged Plan by the Bridge Loan lenders.

15. Under the terms of the Prepackaged Plan, holders of the 8 ½% Notes and the 9 ⅞% Notes will receive 93% of the equity in the Reorganized Debtors. Holders of the 10% Notes will receive 5% of the equity in the Reorganized Debtors, and will also receive new notes bearing interest at 11% per annum in a face amount of $750 million plus accrued but unpaid

obligations (including interest) as of the effective date of the Prepackaged Plan.[2] Holders of the NTK 10 ¾% Notes and holders of claims arising under the Bridge Loan will receive the remaining 2% of equity in the Reorganized Debtors, as well as certain warrants for the future purchase of additional equity.

16. In addition, the Prepackaged Plan provides for the payment in full of (i) allowed administrative expense claims, (ii) federal, state, and local tax claims, and (iii) certain other priority non-tax claims. Trade creditors and certain other holders of general unsecured claims against Nortek, Inc. and the Subsidiary Debtors are unimpaired under the Prepackaged Plan and will receive payment in full on account of their claims on the latest of (i) the effective date of the Prepackaged Plan (or as soon thereafter as reasonably practicable), (ii) the date on which such claim would be paid in the ordinary course of the Debtors' business, or (iii) as otherwise agreed by the Debtors and the holder of such claim. Holders of equity interests in NTK Holdings, the Debtors' ultimate corporate parent, will not receive a distribution.

17. The Prepackaged Plan contemplates a comprehensive financial restructuring of the Debtors' existing capital structure that will allow the Debtors to delever their balance sheet through short and consensual chapter 11 cases, and emerge from chapter 11 poised for future growth and stability.

---

[2] The Prepackaged Plan entitles holders of the 10% Notes to this distribution because such holders voted to accept the Prepackaged Plan in amounts exceeding the statutory thresholds of section 1126 of the Bankruptcy Code. Had the class voted to reject the Prepackaged Plan, the Prepackaged Plan provided that claims arising under the 10% Notes would be reinstated or would receive such distributions as required by section 1129(b) of the Bankruptcy Code.

### Jurisdiction and Venue

18.   This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relief Requested

19.   By this Application, the Debtors request entry of an order substantially in the form attached hereto as Exhibit "A" (the "***Proposed Order***"), pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a) authorizing the Debtors to retain and employ Blackstone for the purpose of providing necessary financial advisory services in connection with the Debtors' chapter 11 cases in accordance with the terms of (i) that certain letter agreement between the parties (the "***Letter Agreement***"), dated as of June 17, 2009 (the "***Effective Date***"), which is attached hereto as Exhibit "B," and (ii) that certain Indemnification Agreement, dated as of June 17, 2009 (the "***Indemnification Agreement***"), which is attached to the Letter Agreement as Attachment A.

### Basis for Relief Requested

20.   Pursuant to section 327(a) of the Bankruptcy Code, a debtor in possession is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor in possession] in carrying out [its] duties under [the Bankruptcy Code]." 11 U.S.C. § 327(a). Section 1107(b) of the Bankruptcy Code modifies sections 101(14) (definition of "disinterested person") and 327(a) of the Bankruptcy Code in chapter 11 cases by providing that "a person is not disqualified for employment under sections 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b). Under section 328 of the Bankruptcy Code,

a debtor in possession may, with the Court's approval, employ professional persons under section 327(a) of the Bankruptcy Code "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

21. As required by Bankruptcy Rule 2014(a), this Application sets forth the following: (a) the specific facts showing the necessity for Blackstone's employment, (b) the reasons for the Debtors' selection of Blackstone as financial advisor in connection with these chapter 11 cases, (c) the professional services to be rendered by Blackstone, (d) the arrangement between the Debtors and Blackstone with respect to Blackstone's compensation, and (e) to the best of the Debtors' knowledge, the extent of Blackstone's connections, if any, to certain parties in interest in these chapter 11 cases.

## Facts Relevant to the Relief Requested

### *The Debtors' Desire to Retain Blackstone*

22. Recently, the Debtors have faced a number of challenges which, taken together, have had a negative impact on the Debtors' liquidity and overall financial performance, thereby necessitating the commencement of these cases. To address this growing liquidity crisis, the Debtors retained Blackstone to provide financial advisory services in connection with, among other things, a possible restructuring of certain liabilities of Nortek and to assist in analyzing, structuring, negotiating and effecting a "Restructuring" (as defined in the Letter Agreement) pursuant to the terms of the Letter Agreement. As a result of an ongoing lack of adequate liquidity, the Debtors had no alternative but to seek relief under chapter 11 of the Bankruptcy Code.

### Blackstone's Qualifications

23. Blackstone is a preeminent financial and restructuring advisor with a reputation for creativity in complex business situations. Nortek has selected Blackstone as financial advisor because of Blackstone's diverse experience, knowledge, recognized expertise, and reputation in the restructuring field, its understanding of the issues involved in chapter 11 cases, and because Nortek believes that Blackstone possesses the resources and is well qualified to provide the financial advisory services required.

24. Blackstone's Restructuring and Reorganization Advisory Group (the "*Restructuring Group*") is a leading advisor to companies as well as creditors in large, complex, and high profile restructurings and bankruptcies. Established in 1991, the Restructuring Group has advised companies and creditors in more than 245 distressed situations, both in and out of bankruptcy proceedings, involving some $945 billion of total liabilities. The Restructuring Group's clients include companies, creditors, corporate parents and financial sponsors. The Restructuring Group is particularly active in large, complex and high-profile bankruptcies and restructurings, having advised the following clients, among others, in their chapter 11 reorganizations: AbitibiBowater, Delta Air Lines, Inc., Eurotunnel Group, Enron Corporation, Global Crossing Ltd., Flying J Inc., Mirant Corp., SemGroup, W.R. Grace & Co., and Winn-Dixie Stores, Inc. In addition, the Restructuring Group has provided general restructuring advice to such major companies as AIG, Aquila, Inc., The Goodyear Tire & Rubber Company, Syncora, and Xerox Corporation. As a result of its work on a significant share of major restructuring assignments, the Restructuring Group is one of the most seasoned and experienced restructuring advisors on Wall Street.

25. Timothy R. Coleman, a Senior Managing Director and Co-head of the Restructuring Group, will lead all of the day-to-day aspects of this assignment. Mr. Coleman has

US_ACTIVE:\43131251\11\43131251_11.DOC\65859.0003
RLF1-3496446-1

10

been providing restructuring services full-time since 1986. He is well-suited to provide the services required by Nortek and his advisory experience extends across many industries. Advisory assignments in which he has been actively involved include, among others, ACA Capital Holdings, Inc., Adelphia (for AT&T Broadband), Adelphia (for Comcast), AIG, Inc., Alestra (for AT&T), Alliance Entertainment Corp., Allied Capital Corporation, AT&T Canada (for AT&T), Barneys, Inc., Bear Stearns Asset Management, Bidermann (Court), Cable & Wireless Holdings, Inc., Cellnet Data Systems, Inc., Credit-Based Asset Servicing and Securitization, Delta Air Lines, Inc., Ermis Maritime Shipping, Excite@Home (for AT&T), Financial Guaranty Insurance Company, FLAG Telecom, Ford Motor Company, Geneva Steel Company, Global Power Equipment Group, Inc., Guangdong Enterprises, Joy Global, Inc., Harrah's Jazz Company, Hercules, Inc., IAP Worldwide Services, Inc., JPS Textile Group, Inc., Koll Real Estate (Board), LyondellBasell Industries, Mirant Corp., MoneyGram International, Inc., Molten Metal Technology, Inc., Natural Products, LLC, RCN Corp., Refco, Inc., R.H. Macy & Co., Russell-Stanley Holdings, Inc., Safelite Glass Corp., Stratosphere Corporation, Sunbeam (Board), TOUSA, Inc., Tribune Co., Vencor, Inc., Williams Communications Group, Inc., Xerox Corp., and XL Capital Ltd. Mr. Coleman will be working with Mark Buschmann, a Managing Director of Blackstone's Restructuring Group. Mr. Buschmann has nine years of restructuring experience.

26. The following Blackstone professionals will work on the Nortek engagement in addition to Messrs. Coleman and Buschmann: Jonathan Kaufman, Associate and Matthew Ross, Analyst. Additional staff will be provided as needed.

***Blackstone's Retention***

27. As set forth above, Nortek employed Blackstone on June 17, 2009, to assist in the evaluation of strategic alternatives and to serve as its financial advisor in connection

with its restructuring efforts. Since then, Blackstone has become familiar with Nortek's businesses, operations and financial condition and is both well-qualified and uniquely able to represent Nortek as financial advisor in connection with such matters in a cost-effective and efficient manner.

28. The resources, capabilities and experience of Blackstone in advising the Debtors are crucial to the Debtors' successful restructuring. An experienced investment bank and financial advisor such as Blackstone fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals. Broadly speaking, Blackstone will assist in the evaluation of strategic alternatives and render financial advisory services to the Debtors in connection with their ongoing restructuring efforts. For these reasons, the Debtors require the services of a capable and experienced investment banking firm such as Blackstone.

***Services to Be Provided by Blackstone***

29. Nortek, with the assistance of counsel, has negotiated the terms of the Letter Agreement, which sets forth the services that Blackstone will provide to Nortek as well as the manner in which Blackstone will be compensated for such services. To date, Blackstone has provided and/or will provide the following services on a going-forward basis upon the Court's approval of this Application:[3]

    a.    Assist in the evaluation of Nortek's businesses and prospects;

    b.    Assist in the development of Nortek's long-term business plan and related financial projections;

    c.    Assist in the development of financial data and presentations to Nortek's board, various creditors and other third parties;

---

[3] The following description of the services to be provided under the Letter Agreement is for summary purposes only, and is qualified in all respects by the terms of the Letter Agreement itself. Capitalized terms used in this paragraph but not otherwise defined shall have the meanings ascribed to them in the Letter Agreement.

d. Analyze Nortek's financial liquidity and evaluate alternatives to improve such liquidity;

e. Analyze various restructuring scenarios and the potential impact of these scenarios on the recoveries of those stakeholders impacted by the Restructuring;

f. Provide strategic advice with regard to restructuring or refinancing Nortek's Obligations;

g. Evaluate Nortek's debt capacity and alternative capital structures;

h. Participate in negotiations among Nortek and its creditors, suppliers, lessors and other interested parties;

i. Value securities offered by Nortek in connection with a Restructuring;

j. Advise Nortek and negotiate with lenders with respect to potential waivers or amendments of various credit facilities;

k. Assist in arranging debtor-in-possession ("DIP") financing for Nortek, as requested;

l. Provide expert witness testimony concerning any of the subjects encompassed by the other financial advisory services;

m. Assist Nortek in preparing marketing materials in conjunction with a possible Transaction;

n. Assist Nortek in identifying potential buyers or parties in interest to a Transaction and assist in the due diligence process;

o. Assist and advise Nortek concerning the terms, conditions and impact of any proposed Transaction; and

p. Provide such other advisory services as are customarily provided in connection with the analysis and negotiation of a Restructuring or a Transaction, as requested and mutually agreed.

30. Blackstone has stated its desire and willingness to act in these chapter 11 cases and to render the necessary professional services as financial advisor for Nortek.

US_ACTIVE:\43131251\11\43131251_11.DOC\65859.0003
RLF1-3496446-1

13

*Disclosure Concerning Conflicts of Interest*

31. Blackstone has informed the Debtors that, except as qualified in the verified statement of Timothy R. Coleman in support of the Application (the "*Coleman Declaration*"), a copy of which is annexed hereto as Exhibit "C," and except as qualified in the verified statement of Robert J. Gentile in support of the Application (the "*Gentile Declaration*," and together with the Coleman Declaration, the "*Blackstone Declarations*"), a copy of which is annexed hereto as Exhibit "D," Blackstone has no material connection with the Debtors, their creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee for the District of Delaware (the "*U.S. Trustee*") or any person employed by the office of the U.S. Trustee in the above-captioned chapter 11 cases.

32. Based on the Blackstone Declarations, the Debtors believe that Blackstone (a) does not hold or represent any interest adverse to the Debtors or their estates and (b) is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code. The Blackstone Declarations, executed on behalf of Blackstone in accordance with section 327 of the Bankruptcy Code and Bankruptcy Rule 2014, are filed contemporaneously herewith and attached hereto as Exhibits "C" and "D," respectively, are incorporated herein by reference. The Debtors' knowledge, information, and belief regarding the matters set forth herein are based, and made in reliance upon, the Blackstone Declarations.

33. The Debtors believe that the employment of Blackstone is necessary and is in the best interests of the Debtors and their estates.

*Disclosure of Compensation*

34.     As of June 17, 2009, and pursuant to the Letter Agreement, Blackstone was retained by Nortek on a prepetition basis to represent Nortek in its restructuring and reorganization efforts (the "***Prepetition Assignment***"). In connection with the Prepetition Assignment, Blackstone was paid, upon executing the Letter Agreement, a fee of $441,666.67 (an "***Execution Fee***"), monthly advisory fees ("***Monthly Fees***") of $1,250,000.00 for the period of June 17, 2009 through November 16, 2009, a Restructuring Fee (as defined in the Letter Agreement) of $8,250,000.00, and a $25,000.00 expense advance (the "***Expense Advance***"). The foregoing is a summary of the terms of the Letter Agreement. For a more detailed description of Blackstone's fees, please see the Letter Agreement attached hereto as Exhibit "B."

35.     As of the Commencement Date, Blackstone has earned an Execution Fee in the amount of $441,666.67, Monthly Fees aggregating $1,040,322.58 and a Restructuring Fee of $8,250,000.00 for advisory services rendered on behalf of the Debtors during the Prepetition Assignment. Further, Blackstone has recognized out-of-pocket expenses incurred in connection with its Prepetition Assignment in the amount of $26,882.06. Blackstone will apply the net unearned Monthly Fees in the amount of $209,677.42 first against the amount by which out-of-pocket expenses incurred by Blackstone during the Prepetition Assignment exceed the Expense Advance (if any), with the balance of the net unearned Monthly Fees to be applied against monthly advisory fees earned and out-of-pocket expenses incurred by Blackstone postpetition. To the extent the Expense Advance exceeds out-of-pocket expenses incurred by Blackstone prepetition, such excess shall be applied against postpetition fees earned and out-of pocket expenses incurred.

36. The fees and expenses described above are consistent with Blackstone's normal and customary billing practices for cases of this size and complexity, both in and out of court, which require the level and scope of services outlined in the Letter Agreement. The compensation arrangement provided for in the Letter Agreement and generally described above is consistent with and typical of arrangements entered into by Blackstone and other investment banking and financial advisory firms of comparable standing in connection with rendering of similar services to clients such as the Debtors. Blackstone and the Debtors believe that the foregoing compensation arrangement is both reasonable and market-based.

37. Blackstone will seek compensation and reimbursement of out-of-pocket expenses as specified in the Letter Agreement, with the payment of such fees and expenses to be approved in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules, and any orders of this Court; provided, however, that Blackstone shall not be required to maintain time records and Blackstone shall not be required to maintain receipts for individual expenses in amounts less than $75; and provided further, that the approval of Blackstone's fees and out-of-pocket expenses will be subject to the standards contained in section 328(a) of the Bankruptcy Code.

38. Notwithstanding the approval of the compensation requested herein, all of Blackstone's fees and out-of-pocket expenses in this case will be subject to approval of the Court upon proper application by Blackstone in accordance with section 328 of the Bankruptcy Code, the fee and expense guidelines established by the U.S. Trustee and any other applicable requirements or orders of the Court; further, the section 328(a) standard of review shall not limit the scope of review and objection, if any, of the U.S. Trustee.

39. As set forth in the Letter Agreement attached hereto as Exhibit "B" and subject to the terms and conditions therein, Nortek agreed to indemnify Blackstone and certain related parties from losses related to, arising out of, or in connection with the engagement of Blackstone under the Letter Agreement. The Debtors believe the indemnity provision is a reasonable term and condition of Blackstone's engagement. Unlike the market for other professionals that Nortek may retain, indemnification is a standard term for the market for financial advisors. Blackstone and the Debtors believe the indemnity provision is comparable to those generally obtained by financial advisory firms of similar stature to Blackstone and for comparable engagements, both in and out of court. Indeed, debtor indemnification of Blackstone has been approved in recent chapter 11 cases commenced in this District. See, e.g., In re Abitibibowater Inc., Ch. 11 Case No. 09-11296 (KJC) (Bankr. D. Del. Aug. 11, 2009) [Docket No. 836]; In re Flying J Inc., Ch. 11 Case No. 08-13384 (MFW) (Bankr. D. Del. Apr. 3, 2009) [Docket No. 926]; In re Merisant Worldwide, Inc., Ch. 11 Case No. 09-10059 (PJW) (Bankr. D. Del. Feb. 25, 2009) [Docket No. 146]; In re Semcrude, L.P., Ch. 11 Case No. 08-11525 (BLS) (Bankr. D. Del. Sept. 12, 2008) [Docket No. 1350].

### Notice

40. No trustee, examiner or statutory creditors' committee has been appointed in these chapter 11 cases. Notice of this Application shall be provided to: (i) the United States Trustee for the District of Delaware; (ii) the Debtors' thirty (30) largest unsecured creditors (on a consolidated basis); (iii) counsel for the Ad Hoc Committee, Paul, Weiss, Rifkind, Wharton & Garrison LLP (attn: Andrew N. Rosenberg, Lawrence G. Wee, and Brian S. Hermann) and Young Conaway Stargatt & Taylor, LLP (attn: Pauline K. Morgan); (iv) Goldman Sachs Credit Partners L.P. as agent under the Bridge Loan (attn: Andrew Caditz, Philip F. Green, Jaime Weisfelner, and Pedro Ramirez); (v) counsel for Goldman Sachs Credit Partners L.P., Cravath,

Swaine & Moore LLP (attn: George Stephanakis); (vi) Bank of America, N.A. as agent under the ABL Facility (attn: Timothy A. Clarke and Richard M. Levensen); (vii) counsel for Bank of America, N.A., Shearman & Sterling LLP (attn: James L. Garrity and Susan A. Fennessey) and Potter Anderson & Corroon LLP (attn: Laurie Selber Silverstein); (viii) counsel for U.S. Bank N.A. as indenture trustee under the 10% Notes, the 8 ½% Notes, the 9 ⅞% Notes, and the NTK 10 ¾% Notes, Loeb & Loeb LLP (attn: Walter H. Curchack); (ix) counsel for the Ad Hoc Group of 10% Noteholders (as defined in the Prepackaged Plan), Akin Gump Strauss Hauer & Feld LLP (attn: Michael S. Stamer and Philip C. Dublin); and (x) all parties entitled to receive notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002. The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

## No Previous Request

41. No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as is just and proper.

Dated: October 28, 2009
       Wilmington, Delaware

                      NTK HOLDINGS, INC.
                      (for itself and on behalf of its affiliated Debtor and Debtor in Possession)

By: _____
     Richard Bready
     Chairman, President and Chief Executive Officer